1   BORIS FELDMAN, State Bar No. 128838
    DOUGLAS J. CLARK, State Bar No. 171499
2   IGNACIO SALCEDA, State Bar No. 164017
    BETTY CHANG ROWE, State Bar No. 214068
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   650 Page Mill Road
    Palo Alto, CA 94304-1050
5   Telephone:  (650) 493-9300
    Facsimile:  (650) 565-5100
6
    Attorneys for Defendants
7   Rambus Inc. and P. Michael Farmwald

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  JAMES M. KELLEY, M. LARSSON          )   CASE NO.:  C-07-01238 JF
    and DOUGLAS B. KELLEY,               )
13                                       )   **DEFENDANTS RAMBUS INC. AND**
                  Plaintiffs,            )   **P. MICHAEL FARMWALD'S**
14                                       )   **NOTICE OF MOTION, MOTION**
             v.                          )   **TO DISMISS CONSOLIDATED**
15                                       )   **AMENDED COMPLAINT AND**
    RAMBUS, INC., PRICEWATERHOUSE        )   **MEMORANDUM OF POINTS AND**
16  COOPERS, LLP, GEOFFREY TATE, DAVID   )   **AUTHORITIES**
    MOORING, PAUL MICHAEL FARMWALD,      )
17  BRUCE S. DUNLEVIE, EDWARD H.         )
    LARSEN, WILLIAM DAVIDOW, ROBERT      )
18  EULAU, JOHN DANFORTH, DOES (1-10)    )   Date:     January 18, 2008
                                         )   Time:     9:00 a.m.
19                Defendants.            )   Before:  Hon. Jeremy Fogel
                                         )
20  _____ )

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................1

ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3)).................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION.......................................................................................................................1

I.   PLAINTIFFS STILL HAVE NOT ESTABLISHED LOSS CAUSATION......................3

    A.   Plaintiffs Still Have Not Sufficiently Pleaded Loss Causation With Regard
        To Rambus' Option-Granting Practices.................................................................4

    B.   Plaintiffs Still Cannot Plead Loss Causation With Regard To Rambus'
        Patent Strategy And Related Litigation................................................................5

II.  THE HEIGHTENED PLEADING STANDARDS OF RULE 9(**B**) AND THE
    PSLRA APPLY TO THE CAC .......................................................................................6

III. THE CAC FAILS TO STATE A CLAIM UNDER RULE 10**B**-5 (COUNT I) ................7

    A.   Nearly All Of Plaintiffs' Rule 10b-5 Claims Are Time-Barred............................7

    B.   Plaintiffs Still Fail To Allege Reliance To Support A Rule 10b-5 Claim..............9

    C.   Plaintiffs' Allegations Regarding "Backdated" Option Grants Still Fail To
        Support A Rule 10b-5 Claim...............................................................................10

        1.   Plaintiffs Still Fail To Plead Facts Giving Rise To a "Strong
            Inference" of Scienter On the Part of Dr. Farmwald...............................11

            a.   Board or Committee Membership is insufficient to establish
                scienter ......................................................................................11

            b.   Rambus' "admissions" are insufficient to establish scienter ........13

        2.   Plaintiffs Still Fail To Plead With Particularity Facts Giving Rise to
            a "Strong Inference" of Scienter On the Part of Rambus.........................14

            a.   The CAC fails to adequately allege scienter against Rambus
                to the extent it fails to do so against the individual defendants.....14

            b.   The pleaded facts do not support an inference that the
                November 25, 2003 grants were intentionally backdated ............16

            c.   The individual defendants' stock sales do not strengthen
                plaintiffs' otherwise insufficient scienter allegations...................17

    D.   Allegations Regarding Rambus' Patent Strategy and Related Litigation
        Risks Still Fail To Support A Claim Under Rule 10b-5 .......................................18

    E.   The CAC Fails To State A Claim For "Scheme" Liability ....................................19

IV.    PLAINTIFFS' OTHER FEDERAL CLAIMS ALSO FAIL................................................20

       A.    The CAC Fails To State A Claim Under Section 18 (Count III) ..........................20

       B.    The CAC Fails to State A Claim Under Section 14(a) (Count II) ........................21

             1.    Plaintiffs' Section 14(a) Claim is Derivative in Nature ............................21

             2.    Plaintiffs Lack Standing to Assert Their Section 14(a) Claim...................22

             3.    All of Plaintiffs' Section 14(a) Claims are Time-Barred .........................22

       C.    The CAC Fails To State A Claim Under Section 20(a) (Count IV) ....................23

V.     THE CAC FAILS TO STATE A CLAIM FOR COMMON LAW FRAUD ..................24

CONCLUSION ....................................................................................................................25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Aizuss v. Commonwealth Equity Trust*, 847 F. Supp. 1482 (E.D. Cal. 1993) ................................. 8

5

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d
    666 (E.D. Pa. 2004) ........................................................................................................... 4

6

7

*Basic v. Levinson*, 485 U.S. 224 (1988) ....................................................................... 5, 10

8

*Blau v. Harrison*, No. 04 C 6592, 2006 WL 850959 (N.D. Ill. Mar. 24, 2006) .......................... 22

9

*Bruns v. Ledbetter*, 583 F. Supp. 1050 (S.D. Cal. 1984) ....................................................... 25

10

*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245 (10th Cir. 2001) ....................................... 19

11

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ........... 11, 13, 15

12

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) ................................................. 21

13

*Dodds v. CIGNA Sec., Inc.*, 12 F.3d 346 (2d Cir. 1993) ...................................................... 7

14

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ...................................................... 3, 4

15

*Durning v. Citibank Intern.*, 990 F.2d 1133 (9th Cir. 1993) ................................................. 9

16

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002) ................................................. 9

17

*Gentile v. Rossette*, 906 A.2d 91 (Del. 2006) .................................................................. 22

18

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) ....................................................... 19

19

*Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) ................................................................. 25

20

*Hamilton v. Cunningham*, 880 F. Supp. 1407 (D. Colo. 1995) ............................................. 23

21

*Howard v. Everex*, 228 F.3d 1057 (9th Cir. 2000) ...................................................... 23, 24

22

*Ieradi v. Mylan Labs, Inc.*, 230 F.3d 594 (3d Cir. 2000) .................................................... 19

23

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192
    (S.D.N.Y. 2004) ............................................................................................................ 4

24

*In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012 (N.D. Cal. 2002) ....................... 14

25

*In re Ariba, Inc. Sec. Litig.*, No. C03-00277, 2005 WL 608278 (N.D. Cal. Mar. 16,
    2005) .......................................................................................................................... 21

26

*In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006) ...................................... 5

27

*In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728 (M.D. Tenn. 2006) ................................... 5

28

DEFS. RAMBUS AND FARMWALD'S MOTION TO
DISMISS CONSOLID. AMENDED COMPLAINT;
CASE NO. C-07-1238 JF
    -iii-
    3243682_1.DOC

*In re CBT Group PLC Sec. Litig.*, No. C-98-21014, 1999 WL 1249287 (N.D. Cal. July 21, 1999) ................................................................................ 12

*In re CNET Networks, Inc.*, 483 F. Supp. 2d 947 (N.D. Cal. 2007) ............................ 9, 12

*In re Computer Sciences Corp. Deriv. Litig.*, No. CV06-05288, 2007 WL 1321715 (C.D. Cal. Mar. 27, 2007) .......................................................... 16

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522, 2006 WL 1180267 (N.D. Cal. May 3, 2006) .............................................. 4

*In re Cornerstone Propane Partners, L.P.*, 355 F.Supp.2d 1069 (N.D. Cal. 2005) ............ 16

*In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189 (3rd Cir.) ................................ 23

*In re F5 Networks, Inc. Deriv. Litig.*, No. C06-794, 2007 WL 2476278 (W.D. Wash. Aug. 6, 2007) ........................................................... 12, 16

*In re Genentech, Inc. Sec. Litig.*, No. C-88-4038, 1989 WL 106834 (N.D. Cal. July 7, 1989) ............................................................................ 20

*In re Hansen Natural Corp. Sec. Litig.*, No. CV 06-7599, 2007 WL 3244646 (C.D. Cal. Octo. 16, 2007) ................................................... 9, 12, 13

*In re Harmonic, Inc. Sec. Litig.*, C 00-2287, 2002 WL 31974384 (N.D. Cal. Nov. 13, 2002), *aff'd in relevant part, rev'd in part, Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674 (9th Cir. 2005) ................................ 6

*In re Linear Tech. Corp. Deriv. Litig.*, No. C-06-3290, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) ......................................................... 16

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D .Cal. 2000) ........... 6, 24

*In re Openwave Sys. Inc. S'hldrs Deriv. Litig., No. C 06-03468*, 2007 WL 1456039 (N.D. Cal. May 17, 2007) ...................................................... 16

*In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181 (N.D. Cal. 2000), *aff'd*, 335 F.3d 843 (9th Cir. 2003) ......................................................... 12, 17

*In re Read-Rite Corp. Sec. Litig.*, No. C98-20434, 2000 WL 1641275 (N.D. Cal. Oct. 13, 2000),, *aff'd*, 335 F.3d 843 (9th Cir. 2003) .......................... 15

*In re Royal Dutch/Shell Transport.*, No. 04-374,  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ......................................................... 19, 20

*In re Royal Dutch/Shell Trans. Sec. Litig.*, 380 F. Supp. 2d 509 (D.N.J. 2005) ............ 5

*In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003) ............................... 10

*In re Silicon Graphics, Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) ........... 10, 11, 17

*In re Silicon Storage Tech., Inc.*, No. C-05-0295, 2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ........................................................ 11, 13

*In re Textainer P'ship Sec. Litig., C 05-0969*, 2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) ............................................................................ 6

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002).....................................18

*In re Verisign, Inc. Deriv. Litig.*, No. C-06-4165, 2007 WL 2705221 (N.D. Cal.
Sept. 14, 2007) ..................................................................................6, 12, 13,
14, 21, 23

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994) ......................................................24

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) .....................7, 23

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) ...................7, 8

*Mathews v. Centex Telemanagement, Inc.*, No. C-92-1837, 1994 WL 269734 (N.D.
Cal. June 8, 1994).................................................................................18

*Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993) .....................................................8

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) .....................................................25

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989).............................24

*Morgan v. AXT, Inc.*, Nos. C04-4362, C05-5106, 2005 WL 2347125 (N.D. Cal.
Sep. 23, 2000)....................................................................................16

*Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424 (9th Cir. 1995)..............................14

*Olson v. Cohen*, 106 Cal. App. 4th 1209 (2003) ..................................................25

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 (9th Cir. 2004) ................................7

*Rambus, Inc. v. Infineon Technologies AG*, 318 F.3d 1081 (Fed. Cir. 2003) .......................19

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ...............................................24

*Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, (N.D.
Cal. Aug. 14, 2006) ...............................................................................7

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006)..................................20

*Smillie v. Park Chem. Co.*, 466 F. Supp. 572 (E.D. Mich. 1979) ..................................22

*Sunnyside Dev. Co. v. Opsys Ltd.*, No. C-05-0553, 2005 WL 1876106 (N.D. Cal.
Aug. 8, 2005)......................................................................................24

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007) ............................11

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2003) .......................21

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................6

*Virginia M. Damon Trust v. North Country Fin. Corp.*, 325 F. Supp. 2d 817 (W.D.
Mich. 2004).......................................................................................23

*Weiss v. Amkor Tech., Inc.*, 2007 WL 2808224 (D. Ariz. Sept. 25, 2007) ..........................12, 13

*Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349 (3d Cir. 1993)............................................. 23

*Yang v. Xiong*, No. S-06-1306, 2006 WL 3191173 (E.D. Cal. Nov. 2, 2006).............................. 25

**STATUTES**

15 U.S.C. § 78(r) ...................................................................................................................... 20

15 U.S.C. § 78r(c) ..................................................................................................................... 20

15 U.S.C. § 78u-4(b)(1)(B) .......................................................................................................... 6

15 U.S.C. § 78u-4(b)(2) ............................................................................................................... 6

28 U.S.C. § 1658(b) ..................................................................................................................... 7

8 DEL. C. § 141(c) ...................................................................................................................... 15

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 18, 2008, at 9:00 a.m., before the Honorable Jeremy Fogel, Defendants Rambus Inc. ("Rambus" or the "Company") and P. Michael Farmwald will, and hereby do, move pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rules of Civil Procedure 9(b) and 12(b)(6) for an order dismissing plaintiffs' Consolidated Amended Complaint (the "CAC").

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration of Betty Chang Rowe ("Decl.") together with accompanying exhibits; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be properly submitted at the hearing.

**ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))**

1.      Have plaintiffs pleaded sufficient facts to show that they suffered a loss as a result of the defendants' alleged fraud?

2.      Have plaintiffs pleaded particularized facts sufficient to state an actionable claim against the defendants under the federal securities laws?

3.      Have plaintiffs pleaded particularized facts sufficient to state an actionable claim against the defendants for common law fraud?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On October 15, 2007, the Court dismissed plaintiffs' Consolidated Complaint ("CC") because it violated Rule 8. *See* October 15, 2007 Order at 4-5. The Court held that the 295-page CC violated Rule 8 because it "appear[ed] to be a statement that wrongdoing occurred, that all [d]efendants somehow were involved, and that [p]laintiffs therefore are entitled to damages." Order at 4. While shorter in length, the CAC fares no better and should be dismissed.

On this eighth attempt to plead a case, plaintiffs have abandoned their claims under the Securities Act of 1933, nearly all of their state law claims, and have dropped eleven defendants. What remains are claims for alleged violations of §§ 10(b), 14(a), 18(a), and 20(a) of the Securities Exchange Act of 1934 and SEC Rules 10b-5 and 14a-9 (Counts I-IV), a claim for

-1-

1    common law fraud (Count V) and a claim against PricewaterhouseCoopers LLP ("PwC"),

2    Rambus' auditors, for negligent misrepresentation (Count VI).  The CAC seeks to hold Rambus,

3    eight of its current and former officers and directors, and PwC liable for an alleged option

4    "backdating scheme" and "submarine patent deception."  The alleged patent "deception"

5    occurred years ago (in the 1990's), which may explain why only five of the 171 paragraphs in

6    the CAC refer to this subject.  CAC ¶¶ 5, 30, 31, 119, 125.  Nowhere in the CAC do plaintiffs

7    articulate Dr. Farmwald's (or any defendant's) alleged role in or knowledge of the purported

8    "submarine patent deception."  Thus, it appears the bulk of this lawsuit is based on Rambus'

9    option granting practices.  Plaintiffs challenge options issued on eleven grant dates, mostly from

10   1997 to 2001 with one set of grants in November 2003.  CAC ¶ 33, Ex. C1, C2.

11        Like its predecessors, the CAC suffers substantial problems of loss causation, reliance

12   and timeliness, that cut across all of plaintiffs' claims.  The CAC also fails to satisfy Rule 9(b)

13   and the heightened pleading standards of the PSLRA.  Since the filing of the now dismissed CC,

14   Rambus issued its restated financial statements (on September 14, 2007) and the Special

15   Litigation Committee ("SLC") issued its report of its investigation of Rambus' option granting

16   practices (filed on August 24, 2007).  Even with these disclosures, the CAC contains few

17   substantial additional facts.  Rather than plead particularized facts regarding each defendant's

18   alleged involvement and scienter, plaintiffs rely on Rambus' purported "admissions" in its

19   restatement that some options granted from 1997 to 2003 were mispriced.  *See* CAC ¶¶ 29, 36,

20   42.  Yet, Rambus disclosed this fact over a year ago.  *See* Ex. A (October 19, 2006 press release

21   announcing "[t]he vast majority of incorrectly dated grants, both in terms of number of shares of

22   common stock and financial accounting impact, occurred between 1998 and 2001.").

23        Plaintiffs' own submissions also establish their continued failure to adequately link the

24   alleged fraud to their supposed damages.  The information plaintiffs provide of their Rambus

25   securities transactions – limited to three months in 2005 and seven months in 2006 (CAC, Ex.

26   L5-L8) – is still largely unintelligible.  What can be gleaned from plaintiffs' submissions again

27   calls into question their reliance on any Rambus statement as well as whether they can establish

28   loss causation.  For example, plaintiffs purchased over 47,000 shares of Rambus stock during the

1    three month period *after* "Rambus first disclosed its backdating practices-on May 30, 2006." *Id.*

2    ¶ 29, Ex. L6-L7.  In addition, plaintiffs' incessant trading activities expose them as speculative

3    day traders, focused on technical price movements rather than the market price.

4         All of the facts regarding Rambus' option granting practices and related accounting have

5    now been disclosed, yet the CAC suffers the same defects as its predecessors.  At the hearing on

6    defendants' motions to dismiss the CC, the Court "ma[d]e it very clear that even though this is an

7    unusual case in that the plaintiffs are pro se, they have had prior opportunities to amend. . . . And

8    I'm kind of a frame of mind that you get one – get one shot, and if you can't state claims, then

9    that's going to be it."  *See* Ex. B at 7.  Plaintiffs have demonstrated that they cannot state

10   actionable claims against Rambus and Dr. Farmwald (or any defendant), despite *eight*

11   opportunities to do so.  The CAC should be dismissed with prejudice.

12                                    **ARGUMENT**

13   **I.    PLAINTIFFS STILL HAVE NOT ESTABLISHED LOSS CAUSATION**

14        The Supreme Court has explained that a plaintiff may only recover for losses directly

15   caused by defendants' alleged fraud; losses caused by unrelated business or economic conditions

16   are not recoverable.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343-45 (2005).  At the

17   pleading stage, a plaintiff must "provide a defendant with some indication of the loss and the

18   causal connection that the plaintiff has in mind."  *Id.* at 347.  In this case, plaintiffs still fail to

19   allege sufficient facts demonstrating that the alleged fraud *caused* the loss for which they seek to

20   recover.  To allow this lawsuit to proceed under such circumstances "would tend to transform a

21   private securities action into a partial downside insurance policy."  *Id.* at 347-48.

22        Under *Dura,* a plaintiff may recover only for investment losses that followed in the wake

23   of, and thus can be said to have been caused by, a disclosure of the alleged fraud.  *Id.* at 345-46.

24   Before the "truth" of an alleged fraud is revealed, "the plaintiff has suffered no loss; the inflated

25   purchase payment is offset by ownership of a share *that at that instant* possesses equivalent

26   value."  *Id.* at 342 (emphasis in original).  It is only when the "truth" is revealed that negative

27   information can cause a decline in the stock price and a resulting loss in a plaintiff's investment.

28   *See id.* at 342-43.  Thus, a plaintiff must allege he purchased (and did not sell) stock before a

1    corrective disclosure was issued regarding the alleged fraud.  *Id*. at 342-43.

2           The loss causation requirement applies to every one of plaintiffs' claims.[1]  While

3    plaintiffs purport to list their trades in Exhibits L5-L8, the information provided is still

4    insufficient and often unintelligible.  Nonetheless, even with their deficiencies, plaintiffs'

5    exhibits (to the extent decipherable) reveal that the alleged fraud did *not* cause plaintiffs any loss.

6    This reason alone compels dismissal of all of plaintiffs' claims.

7           **A.      Plaintiffs Still Have Not Sufficiently Pleaded Loss Causation With Regard To
                       Rambus' Option-Granting Practices**

8

9           Plaintiffs claim the supposed truth about Rambus' option practices emerged on May 16,

10   2006, when CFRA published a report suggesting that Rambus may be at risk of having

11   backdated options.  CAC ¶ 29.  Plaintiffs claim losses suffered in stock transactions in 2005 (*id.*

12   ¶ 115, Ex. L5), April 2006 and May 8, 10-12, 2006.  *Id.* Ex. L7, L8.  However, under *Dura,*

13   plaintiffs cannot recover loss for transactions during these time periods because any decline in

14   the value of their investments would have been due to market forces and not the revelation of

15   any supposed misrepresentations.  *See In re Cornerstone Propane Partners, L.P. Sec. Litig.,* No.

16   C 03-2522, 2006 WL 1180267, at *8 (N.D. Cal. May 3, 2006) (excluding from class plaintiffs

17   who sold their stock before first corrective disclosure because under *Dura*, loss causation "is also

18   relevant in establishing whether a securities fraud claim has been adequately pled").

19   Consequently, plaintiffs cannot plead loss causation for losses suffered before May 16, 2006.

20          Although plaintiffs claim they learned of the supposed fraud as early as 2005[2] and no

21   later than on May 16, 2006, when the CFRA report put them on notice of a potential problem

22   (CAC ¶ 29), they continued their trading nonetheless.  Plaintiffs appear to have transacted in

23   ───────────────

24          [1] *See, e.g., Dura,* 544 U.S. at 342, 346-48 (§10(b) and common-law fraud require plaintiffs to
     plead and prove they have suffered loss and that their losses were caused by alleged fraud); *In re
25   AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 213 (S.D.N.Y. 2004)
     (loss causation is an element of §14(a) claim); *Argent Classic Convertible Arbitrage Fund L.P. v.
26   Rite Aid Corp.*, 315 F. Supp. 2d 666, 685 (E.D. Pa. 2004) (loss causation is an element of §18
     claim).

27          [2] *See* CAC ¶ 125 (plaintiffs' 2000 and 2001 losses "caused the Plaintiffs to examine closely
     the options grants and compensation expenses reported in the 2004 and 2005 10-K and the 2004
28   and 2005 Proxy Statements in making and retaining Rambus securities in 2005 and 2006.").

Rambus securities dozens of times for many months after that disclosure.[3]  Plaintiffs cannot claim that they reasonably relied on any statements after May 16, 2006, as such reliance would not be reasonable as a matter of law, even if the exact nature or magnitude of the problems was not yet available.  *See Basic v. Levinson*, 485 U.S. 224, 248-49 (1988) (presumption of reliance rebutted for those who trade after corrective statement enters market); *In re BearingPoint, Inc. Sec. Litig.,* 232 F.R.D. 534, 542 (E.D. Va. 2006) (presumption rebutted by showing "plaintiff[s] knew of the misrepresentations when it purchased the shares").  Thus, plaintiffs have not and cannot plead loss causation for any damages suffered on purchases made after May 16, 2006.[4]

**B.    Plaintiffs Still Cannot Plead Loss Causation With Regard To Rambus' Patent Strategy And Related Litigation**

Plaintiffs also cannot recover for losses allegedly suffered as a result of purported misstatements regarding Rambus' alleged patent strategy and JEDEC activities.  The losses they claim occurred in 2000 and 2001.  CAC ¶ 125.  Yet, according to the CAC, this deception was revealed on August 2, 2006, the date of the FTC opinion.  *Id.* ¶ 5.  Plaintiffs cannot recover for losses sustained in 2000 and 2001 because those losses could not have been due to the revelation of the alleged misconduct in 2006.  In addition, as discussed below, allegations similar to those made by plaintiffs were public knowledge as early as March 2000 when they were asserted against Rambus in other lawsuits.  Thus, as of March 2000, plaintiffs were well aware of the

---

[3] Plaintiffs' contention that "[i]f the [p]laintiff had known of the Rambus' frauds . . ., Rambus' securities would never have been considered as an investment" (CAC ¶ 109) is refuted by their own trading.  After Rambus announced its internal investigation on May 30, 2006, plaintiffs purchased 4,500 shares of Rambus stock and engaged in several call option transactions from May 31 to June 26, 2006.  *Id.* Ex. L6, L7.  Following the June 27, 2006 disclosure of a potential restatement, plaintiffs purchased an additional 12,700 shares between June 28 and July 18, 2006.  *Id.* Ex. L7.  Even the July 19, 2006 disclosure of an expected restatement did not dissuade plaintiffs from trading.  They apparently purchased 27,951 more shares from July 20 through August 2006, and engaged in over 50 puts and call option transactions.  *Id.* Ex. L6-L8.

[4] *See In re Royal Dutch/Shell Trans. Sec. Litig.,* 380 F. Supp. 2d 509, 554-56 (D.N.J. 2005) (dismissing claims stemming from post-truth-revealed purchases for failure to plead loss causation); *In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728, 735 (M.D. Tenn. 2006) ("Plaintiff's claim must fail if 'truth' was revealed to the market before she purchased. . . .").

1   alleged fraud upon which a portion of this action is supposedly based.[5]

2       The failure to plead loss causation provides sufficient ground for dismissal, and no

3   further analysis is required.  However, given the length of plaintiffs' allegations, Rambus and Dr.

4   Farmwald will address each of plaintiffs' claims, none of which can survive a motion to dismiss.

5   **II.    THE HEIGHTENED PLEADING STANDARDS OF RULE 9(b) AND THE
        PSLRA APPLY TO THE CAC**

6

7       Because the entire CAC sounds in fraud,[6] it must comply with Rule 9(b).  *Vess v. Ciba-*

8   *Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  When an entire complaint sounds in

9   fraud but fails to satisfy Rule 9(b), dismissal is required.  *Id.* at 1107.  In addition, the federal

10  securities claims must satisfy the PSLRA.  The PSLRA requires complaints to specify "each

11  statement alleged to have been misleading [and] the reason or reasons why the statement is

12  misleading."  15 U.S.C. § 78u-4(b)(1)(B).  To allege scienter, a complaint must "state with

13  particularity facts giving rise to a strong inference that the defendant acted with the required state

14  of mind."  15 U.S.C. § 78u-4(b)(2).  The pleading standards of the PSLRA are not limited to

15  fraud claims; they also apply to a § 14(a) claim, which is based on a negligence standard.[7]

16

17

18  _____

    [5] Plaintiffs allege they suffered losses as a result of Rambus' January 2005 convertible bond
19  offering.  CAC ¶ 118, Ex. L4.  These allegations do not make sense.  Plaintiffs do not allege that
    they purchased any of the bonds.  Instead, they predicate their claims on speculation that "the
20  convertible debt would have been completely unnecessary but for Rambus' illicit backdating
    practices."  *Id.* ¶ 116.  In any event, plaintiffs' own allegations are that the price decline was
21  caused by forces other than alleged fraud.  *See id.* ¶ 117 ("The Rambus convertible loan offer
    caused the stock price to drop . . . due to the following factors:  First, the institutions perceived
22  the bond as diluting the capital stock . . . Second, the purchasers . . . shorted Rambus' stock as
    part of their ordinary convertible arbitrage practices.  Third, the convertible bond was a form of
23  indebtedness that greatly increased the company's risk . . .").  Thus, plaintiffs cannot recover for
    alleged losses related to the bond offering.

24      [6] *See, e.g.*, CAC ¶¶ 65, 66, 76, 96, 99, 102, 103, 109, 120, 125, 129.

25      [7] *See In re Verisign, Inc. Deriv. Litig.*, No. C-06-4165, 2007 WL 2705221, at *34 (N.D. Cal.
    Sept. 14, 2007); *In re Textainer P'ship Sec. Litig.*, C 05-0969, 2005 WL 3801596, at *5 (N.D.
26  Cal. Dec. 12, 2005); *In re Harmonic, Inc. Sec. Litig.*, C 00-2287, 2002 WL 31974384, at *20
    n.17 (N.D. Cal. Nov. 13, 2002), *aff'd in relevant part, rev'd in part, Knollenberg v. Harmonic,*
27  *Inc.*, 152 Fed. Appx. 674 (9th Cir. 2005) ("The PSLRA pleading requirements apply to claims
    brought under § 14(a) and Rule 14a-9); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d
28  1248, 1266-67 (N.D .Cal. 2000).

**III.     THE CAC FAILS TO STATE A CLAIM UNDER RULE 10b-5 (COUNT I)**

Plaintiffs allege that all defendants violated Rule 10b-5 by making misrepresentations in Rambus' SEC filings that improperly accounted for and disclosed past option-granting practices, and concealed Rambus' "other unfair business practices" (CAC ¶¶ 126-34), which Rambus and Dr. Farmwald interpret as the alleged "submarine patent" "deception" and related litigation. Plaintiffs also seek to impose "scheme" liability under Rule 10b-5(a) & (c). *Id.* ¶¶ 128-29. Count I must be dismissed with prejudice. It runs afoul of the statute of limitations, and now after eight attempts, plaintiffs have shown that they cannot plead sufficient facts supporting each element of a Rule 10b-5 claim.

**A.     Nearly All Of Plaintiffs' Rule 10b-5 Claims Are Time-Barred**

Plaintiffs concede their claims fall outside the federal statute of limitations.[8] The statute of limitations for a §10(b) claim is the earlier of two years after discovery of the violation or five years from the alleged violation. 28 U.S.C. § 1658(b); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 950 (9th Cir. 2005). The statute runs separately from each purported violation. *Siemers v. Wells Fargo & Co.,* No. C 05-04518 WHA, 2006 WL 2355411, at *13 (N.D. Cal. Aug. 14, 2006). Neither the five-year nor the two-year statute is subject to equitable tolling.[9] Where, as here, a statute of limitations defense is clear on the face of the complaint, dismissal is required. *Dodds v. CIGNA Sec., Inc.,* 12 F.3d 346, 352 n.3 (2d Cir. 1993).

**Allegations Regarding Rambus' Patent Strategy and JEDEC Activities.** Plaintiffs filed this action on March 1, 2007. Therefore, all Rule 10b-5 claims based on alleged misstatements regarding Rambus' patent strategy and JEDEC activities before March 1, 2002 are absolutely barred by the five-year statute of repose. *See Livid Holdings*, 416 F.3d at 950. All Rule 10b-5 claims based on the patent "deception" are likewise absolutely barred by the statute

---

[8] *See* CAC ¶ 79 ("Rambus . . . has benefitted from the 'running' of the federal securities fraud statutes of limitations and repose.").

[9] *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363-64 (1991*); P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 103 (9th Cir. 2004) ("[A] repose period can run to completion even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues.").

1  of repose because that "deception" occurred in late 1990's.  *See* CC ¶ 2.

2         Application of the statute of limitations results in the same conclusion.  Because the

3  purported patent "deception" occurred before the Sarbanes-Oxley Act, the applicable limitations

4  period is one year (rather than two years) from discovery.  *Livid Holdings*, 416. F.3d at 950.  The

5  statute begins to run when plaintiff discovers or with reasonable diligence should have

6  discovered the basis for a claim.  *Id.* at 951.  Plaintiffs' patent allegations are not novel.  In their

7  prior CC, plaintiffs acknowledged that similar allegations have been in the public domain since

8  March 2000 when Hitachi filed counterclaims against Rambus alleging fraud, deceptive trade

9  practices and misrepresentation in connection with Rambus' JEDEC activities.  *See, e.g.*, CC

10 ¶¶ 624(a), 631.  Other lawsuits alleging similar allegations were filed against Rambus by other

11 companies in August 2000.  *See* CC ¶ 624(e), (i), (j); Ex. C at 13-14, 48; Ex. D at 14-15.  A year

12 later, several securities class actions were filed in this court (and ultimately dismissed) based on

13 similar allegations.  Ex. E at 17; Ex. F at 71-72 (describing dismissal of securities suits following

14 the Federal Circuit's decision that rejected the basis for the JEDEC allegations).

15        Plaintiffs are deemed to be on inquiry notice of these prior pleadings as soon as they are

16 filed.  *See Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir. 1993) (information about prior litigation

17 in SEC filings placed investors on inquiry notice).  Plaintiffs' own prior allegations confirm that

18 Hitachi's publicly filed March 2000 counterclaims were sufficient to put them on inquiry notice.

19 Plaintiffs allege that Rambus' "alternative covert strategy that gave rise to 'submarine patent

20 fraud'" was revealed in "the year 2000 when Rambus sued Hitachi for Royalties on JEDEC

21 SDRAM."  CC ¶ 231.  Thus, the statute of limitations for Rule 10b-5 claims based on Rambus'

22 patent strategy expired in March 2001, long before plaintiffs filed this suit.  *Aizuss v.*

23 *Commonwealth Equity Trust*, 847 F. Supp. 1482, 1486-87 (E.D. Cal. 1993) (securities claims

24 time-barred where based on events related to same subject matter of prior class action).

25        **Allegations Regarding Option Backdating.**  The five-year statute of repose starts on the

26

27

28

1   date an option grant was made.[10]  Therefore, all Rule 10b-5 claims predicated on Rambus option

2   grants made before March 1, 2002 are barred.  Of the challenged grants, only those granted on

3   November 25, 2003 survive the statute of repose.  *See* CAC Ex. C1, C2.  These grants, however,

4   cannot support Rule 10b-5 claims as they are precluded by the two-year statute of limitations.

5   All of the facts necessary to support this claim – the number of options granted, the exercise

6   price, and the market price of Rambus' stock – were disclosed by Rambus or were otherwise

7   publicly available shortly after issuance of the grant.  With one exception, Forms 4 were filed

8   within two business days after these grants were made.[11]  Such prompt filings refute a suggestion

9   of backdating.[12]  Thus, the only alleged misstatements regarding the November 25, 2003 grants

10  that are potentially actionable are those in the 2005 10-K, filed on February 21, 2006.

11      **B.      Plaintiffs Still Fail To Allege Reliance To Support A Rule 10b-5 Claim**

12          Plaintiffs have failed to bear their burden of sufficiently pleading reliance, among other

13  things, to state a Rule 10b-5 claim.  Plaintiffs claim they read "the August 12, 1999 10-Q report"

14  and "subsequent financial reports and proxy statements."  CAC ¶ 107.  The only other SEC

15  filings plaintiffs allegedly read are the 2004 and 2005 10-Ks and proxy statements.  *Id.* ¶¶ 110-

16  11, 125.  Plaintiffs, however, do not actually state they relied on these documents, other than the

17  2005 10-K.  Plaintiffs' boilerplate assertion of reliance on the 2005 10-K is belied by their

18  averment that "earlier losses [in 2000 and 2001] caused the Plaintiffs to examine closely the

19  options grants and compensation expenses reported in the 2004 and 2005 10-K and the 2004 and

20  2005 Proxy Statements in making and retaining Rambus securities in 2005 and 2006."  *Id.* ¶ 125.

21

22

23      [10] *See Durning v. Citibank Intern.*, 990 F.2d 1133, 1136 (9th Cir. 1993) (noting that a cause
    of action accrues at the completion of the sale of the instrument); *Falkowski v. Imation Corp.*,
24  309 F.3d 1123, 1130 (9th Cir. 2002) (describing grant of option as "a purchase or sale").

        [11] *See* Ex. G.  Mr. Mooring's Form 4 was filed on December 1, 2003, the third business day.
25  Ex. H.

26      [12] *See, e.g., In re Hansen Natural Corp. Sec. Litig.,* No. CV 06-7599, 2007 WL 3244646, at
    *11 (C.D. Cal. Octo. 16, 2007) ("The filing of the Form 4s corroborates the grant dates, and
27  makes backdating of these options highly unlikely."); *In re CNET Networks, Inc.*, 483 F. Supp.
    2d 947, 961 (N.D. Cal. 2007) ("It is highly unlikely that defendants could have gone back in time
28  to change the date for this grant if it was on record with the SEC two days after the fact.").

To the extent plaintiffs seek to invoke the "fraud on the market" theory[13] and a presumption of reliance, that presumption is rebutted in this case.  "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."  *Basic*, 485 U.S. at 248.  The presumption is rebutted as to plaintiffs who would have traded "without relying on the integrity of the market."  *Id.* at 249.  Plaintiffs' own complaint reveals that they are speculative day traders of Rambus securities, who "typically focus[] on technical price movements rather than [market] price."  *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (holding that defendants presented "compelling reason to rebut the reliance presumption.").  Indeed, plaintiffs engaged in a six-month trading frenzy from April 19, 2006 through October 6, 2006, making multiple trades in a single day for consecutive days.  *See* CAC Ex. L6-L8.  In July 2006 alone, plaintiffs made nearly 70 trades (including stock purchases), *even after Rambus' disclosure of a possible restatement due to option granting practices.  Id.*  Under plaintiffs' own allegations, it cannot be said that plaintiffs relied on the integrity of the market price of Rambus or on any statement by Rambus.

## C.   Plaintiffs' Allegations Regarding "Backdated" Option Grants Still Fail To Support A Rule 10b-5 Claim

At the September 7, 2007 hearing, the Court specifically advised plaintiffs of the need to plead scienter with particularity.[14]  Plaintiffs have failed to heed this advice.

In the Ninth Circuit, a securities fraud plaintiff "must plead, in great detail, facts that constitute strong circumstantial evidence of *deliberately reckless or conscious misconduct.*"  *In re Silicon Graphics, Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (emphasis added).  Mere

---

[13] Under the fraud-on-the-market theory, a plaintiff is presumed to have relied on the integrity of the market price, thus dispensing with the need to inquire into individualized reliance.  *See Basic*, 485 U.S. at 241-42 ("Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. . . .").

[14] *See* Ex. B at 5 (the Court advised that Rule 9(b) and the PSLRA require "who did what and when they did it and who sent what to whom and that kind of thing.  That's – that's clearly required.  And in addition, the scienter requirement . . . requires a great deal of particularity as to how it is that it can be strongly inferred that the defendants acted with the intent to defraud.")

1   motive and opportunity to commit fraud are not sufficient.  *Id.* at 979.  Recklessness is sufficient

2   "only . . . to the extent that it reflects some degree of *intentional or conscious* misconduct."  *Id.*

3   at 977 (emphasis added).  As a result, pleadings that give rise only to an inference of negligence

4   are insufficient to establish scienter.  *See id.* at 975; *DSAM Global Value Fund v. Altris Software,*

5   *Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("Negligence, even gross negligence, does not rise to the

6   level of the nefarious mental state necessary to constitute securities fraud under the PSLRA.").

7        The inference of scienter "must be more than merely 'reasonable' or 'permissible' – it

8   must be cogent and compelling, thus strong in light of other explanations."  *Tellabs, Inc. v.*

9   *Makor Issues & Rights, Ltd.,* 127 S.Ct. 2499, 2502 (2007).  A complaint can survive a motion to

10   dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as

11   compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 2510.  In

12   applying this standard, the court must consider "plausible nonculpable explanations for the

13   defendant's conduct, as well as inferences favoring the plaintiff."  *Id.*

14        **1.**     **Plaintiffs Still Fail To Plead Facts Giving Rise To a "Strong**
                **Inference" of Scienter On the Part of Dr. Farmwald**

15

16        Despite the Court's prior instructions, the CAC is devoid of specific factual allegations

17   regarding Dr. Farmwald's state of mind or involvement in any alleged misconduct.  Plaintiffs

18   persist in making boilerplate allegations imputing wrongdoing to "defendants," *e.g.,* CAC ¶¶ 34,

19   37, 41, claiming that all defendants engaged in a "backdating scheme."  CAC ¶ 34.  This tactic of

20   lumping has been rejected because scienter must be alleged "as to *each* defendant individually."

21   *In re Silicon Storage Tech., Inc.*, No. C-05-0295, 2006 WL 648683, at *22 (N.D. Cal. Mar. 10,

22   2006) (emphasis added).  As shown below, plaintiffs' allegations regarding Dr. Farmwald fall far

23   short of the stringent pleading standards of Rule 9(b) and the PSLRA.

24        **a.**     **Board or Committee Membership is insufficient to establish**
                **scienter**

25

26        Plaintiffs seek to infer scienter based on Dr. Farmwald's directorship and limited

27   membership on the Compensation Committee.  CAC ¶¶ 37, 70, 68-69, 130.  There are several

28   problems with this theory, both legally and factually.  First, boilerplate allegations that a director

1   defendant disseminated or approved allegedly false financial statements that did not disclose

2   alleged option backdating are insufficient to raise a strong inference of scienter.  *See Verisign*,

3   No. C 06-4165, 2007 WL 2705221, at *29-30; *Weiss v. Amkor Tech., Inc.*, 2007 WL 2808224, at

4   *8 (D. Ariz. Sept. 25, 2007).  Also, under the PSLRA, courts have refused to infer a defendant's

5   state of mind based on corporate position.[15]  Cases alleging option backdating are no exception.[16]

6          In fact, despite plaintiffs' continual reference to Dr. Farmwald's tenure on the

7   Compensation Committee, not a single one of the challenged option grants (CAC Ex. C1, C2)

8   occurred during Dr. Farmwald's ten-month tenure on the Compensation Committee.[17]  *See* CC ¶

9   40 (Dr. Farmwald served on the Committee from October 2002 to July 2003).  Finally, plaintiffs

10  claim the 2006 proxy statement "demonstrates" that the Compensation Committee members,

11  including Dr. Farmwald, "were well aware of the tax implications of 'in the money' grants under

12  [Internal Revenue Code §] 162(m) and had discussed it."  CAC ¶ 69.  Nonsense.  The proxy

13  statement does not even mention "'in the money' grants under 162(m)."  It simply discusses

14  rules for deductibility of certain compensation under Section 162(m).  *See* Ex. I at 21.

15

16  ───────────────

17  [15] *See, e.g., In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1184 (N.D. Cal. 2000),
    *aff'd*, 335 F.3d 843 (9th Cir. 2003) (rejecting allegation that CEO and CFO knew statements
18  were false when made by virtue of their positions); *In re CBT Group PLC Sec. Litig.*, No. C-98-
    21014, 1999 WL 1249287, at *3 (N.D. Cal. July 21, 1999) (rejecting as "speculat[ion] that
19  because of defendants' positions within CBT [as officers and directors], they knew of, and
    participated in, the accounting improprieties").

20  [16] *See, e.g., Hansen,* 2007 WL 3244646, at *13 ("The high rank of various Individual
    Defendants within [company] is insufficient, without more, to infer a strong inference of
21  scienter."); *Verisign,* 2007 WL 2705221, at *30 ("The mere fact of a particular defendant's
    position within [company] is insufficient, without more, to impose liability"; granting motion to
22  dismiss § 10(b) claim); *Weiss*, slip op. at 15 (rejecting plaintiffs' argument that defendants knew
    or participated in backdating because defendants were corporate gatekeepers for administering,
23  recommending and approving terms of option grants; "in essence, the Plaintiffs have done little
    more than alleged the Individual Defendants' respective board or executive positions.").

24  [17] Other defendants' service on the Compensation Committee when allegedly tainted options
25  were granted is, alone, insufficient to raise a strong inference of scienter.  *See, e.g., CNET*, 483 F.
    Supp.2d at 965 (allegations that compensation committee members "ratified" grants of backdated
26  options are insufficient to show wrongdoing); *In re F5 Networks, Inc. Deriv. Litig.*, No. C06-
    794, 2007 WL 2476278, at *13 (W.D. Wash. Aug. 6, 2007) (compensation committee members
27  do not face substantial likelihood of liability absent particularized allegations showing they
    "chose the date on which the allegedly backdated options were to be granted or that they knew a
28  grant's true date.").

1

### b.    Rambus' "admissions" are insufficient to establish scienter

2     Instead of providing particularized allegations as to Dr. Farmwald's scienter, plaintiffs

3   claim that "[i]ndividual scienter is established . . . by Rambus own aforementioned admissions"

4   in its restatement.  CAC ¶ 66.  Plaintiffs rely on the restatement and the Audit Committee's

5   conclusion that the retroactive pricing of options in many instances "was intentional," "not

6   inadvertent."  *Id.* ¶¶ 29, 42, Ex. A1.  Yet, the Reform Act and Rule 9(b) prohibit plaintiffs from

7   *assuming* that all of the individual defendants are responsible for intentional wrongdoing.  In

8   fact, the CAC contains no factual allegations linking the Audit Committee's conclusion to Dr.

9   Farmwald or to any particular defendant.  *See Weiss*, 2007 WL 2808224, at *9 (Special

10   Committee's finding of intentional manipulation of stock option pricing by one former executive

11   insufficient to give rise to "strong inference" of scienter because complaint "has no factual

12   allegations linking that finding to any of the Amkor Defendants.").

13     Moreover, plaintiffs can point to no "admission" in Rambus' restatement that any

14   defendant intentionally failed to account for options correctly.  Courts have long held that simple

15   allegations of a restatement or the failure to follow GAAP do not establish scienter.  *See DSAM*,

16   288 F.3d at 390 ("the mere publication of inaccurate accounting figures, or a failure to follow

17   GAAP, without more, does not establish scienter").  This holds true even in cases involving

18   option backdating allegations.  *See Hansen,* 2007 WL 3244646, at *12; *Verisign,* 2007 WL

19   2705221, at *30; *Weiss*, 2007 WL 2808224, at *8 ("A plaintiff cannot allege scienter simply

20   because [company] restated its financial statements.").  Instead, to plead *fraudulent intent* based

21   on GAAP violations, plaintiffs must plead specific facts that "shed light on the mental state of

22   the defendants, rather than conclusory allegations that defendants must have known of the

23   accounting failures because of the degree of departure from established accounting principles."

24   *Silicon Storage*, 2006 WL 648683, at *20 (citing *DSAM*, 288 F.3d at 390-91).[18]  Plaintiffs still

25   have not done so here, and after eight pleading attempts, it is clear they cannot do so.

26   _____

27      [18] *See also Weiss*, 2007 WL 2808224, at *8 (financial restatement due to mispriced options
   insufficient to establish scienter; "Instead, a complaint must allege specific facts that each
28   individual defendant knew that the accounting for the subject transactions was incorrect at the

(continued...)

1    In sum, the foregoing assertions of scienter on the part of Dr. Farmwald[19] "are entirely

2    conclusory, and the CAC contains no specific allegations of contemporaneous reports or data

3    supporting the assertions of scienter – not a single fact showing what [Dr. Farmwald] knew,

4    when he knew it, or how he acquired that knowledge."  *Verisign*, 2007 WL 2705221, at *30.

5    Moreover, as in *Verisign*, "[t]his lack of factual specificity is particularly striking because" Dr.

6    Farmwald is not "alleged to have received any of the backdated options."  *Id.*

7
### 2. Plaintiffs Still Fail To Plead With Particularity Facts Giving Rise to a "Strong Inference" of Scienter On the Part of Rambus
8

9    Not only have plaintiffs failed to adequately plead scienter against Dr. Farmwald, they

10    have failed to do so as to Rambus.  A "defendant corporation is deemed to have the requisite

11    scienter for fraud only if the individual corporate officer making the statement has the requisite

12    level of scienter, *i.e.,* knows that the statement is false, or is at least deliberately reckless as to its

13    falsity, at the time he or she makes the statement." *In re Apple Computer, Inc. Sec. Litig.*, 243 F.

14    Supp. 2d 1012, 1023 (N.D. Cal. 2002) (citing *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d

15    1424, 1435-36 (9th Cir. 1995)).  The CAC fails to plead particularized facts showing that any

16    individual defendant possessed the requisite level of scienter.

17
### a. The CAC fails to adequately allege scienter against Rambus to the extent it fails to do so against the individual defendants
18

19    For the most part, plaintiffs' scienter allegations against the other individual defendants

20    are similar to those asserted against Dr. Farmwald, and should be rejected for the reasons

21    previously discussed.  Plaintiffs' additional scienter allegations regarding Messrs. Tate, Larsen

22    and Mooring are also inadequate.

23    Plaintiffs claim Mr. Tate "falsified the Stock Option Committee memoranda to conceal

24    the backdating" (CAC ¶ 44) and Mr. Larsen "prepared" "false documents" (*id.* ¶ 67), but they

25    fail to plead with particularity facts to support these conclusions.  The CAC fails to specify

26

27    (...continued from previous page)
time it was determined.").

28    [19] Allegations regarding Dr. Farmwald's stock sales are addressed in Section III.C.2.c, below.

1   which memoranda and "documents" were "falsified" or Messrs. Tate's and Larsen's precise

2   roles in the alleged falsification.  The CAC is likewise devoid of facts suggesting that Messrs.

3   Tate and Larsen acted with the required fraudulent intent, nor is there any allegation that they

4   were aware at the time that the accounting for certain options was incorrect.[20]  Indeed, no facts

5   are alleged regarding when, where or how they purportedly learned of improprieties in the

6   Company's accounting.  *See DSAM*, 288 F.3d at 390-91 (plaintiffs must allege facts showing that

7   each defendant knew the accounting was incorrect).

8        Plaintiffs again seek to infer Mr. Tate's scienter based on his sole membership on the

9   Stock Option Committee.  CAC ¶¶ 27, 32.  The committee's composition is not improper[21] and

10  does not establish scienter.  That committee's authority was limited to the issuance of options to

11  employees *other than executive officers*; the Compensation Committee made all grants to

12  executive officers.  Ex. K at 7 (emphasis added).  As to Mr. Mooring, plaintiffs allege that he

13  (along with Mr. Tate), "as directors *had to* participate in the approval of [the October 20, 1999]

14  grant by the Board of directors."  CAC ¶ 82 (emphasis added).  Citing no facts to support this

15  claim, plaintiffs' allegations amount to no more than claims that Messrs. Tate and Mooring

16  "should have known" of the alleged misconduct by virtue of their positions at the Company.

17  Courts have rejected that notion.[22]  *See* n. 15 & 16, *supra*.

18

---

19      [20] *See In re Read-Rite Corp. Sec. Litig.*, No. C98-20434, 2000 WL 1641275, at *4 (N.D. Cal.

20  Oct. 13, 2000), (dismissing where complaint "contains no factually particular allegations which strongly imply Defendant's *contemporaneous* knowledge that the statement was false when

21  made") (emphasis in original), *aff'd*, 335 F.3d 843 (9th Cir. 2003).

      [21] The 1997 Stock Plan allows for administration "by (A) the Board or (B) a Committee,

22  which committee shall be constituted to satisfy Applicable Laws."  *See* Ex. J at § 4(a)(v).
Delaware law permits a board to delegate authority to a committee of one.  8 DEL. C. § 141(c).

23      The Internal Revenue Code requires that options granted as executive performance-based

24  compensation be administered by a "Committee of two or more 'outside directors'."  *See* Ex. J at
§ 4(a)(ii).  As Rambus disclosed, the Compensation Committee, composed of outside directors,

25  was responsible for compensation for "executives and directors."  *See, e.g.,* Ex. K at 6.

      [22] Unable to raise a strong inference of scienter, plaintiffs speculate that Mr. Tate's

26  cancellation of a number of his unvested options is an acknowledgement of wrongdoing.  CAC
¶ 32, 79, 114.  To the contrary, as Rambus disclosed, Mr. Tate "unilaterally" took this action so

27  "to conform his compensation going forward as a non-employee Board member" after he
resigned as CEO.  *See* Ex. L.

28      That Messrs. Tate, Mooring and Eulau left Rambus (CAC ¶¶ 70, 120-21) also is not

(continued...)

DEFS. RAMBUS AND FARMWALD'S MOTION TO       -15-
DISMISS CONSOLID. AMENDED COMPLAINT;
CASE NO. C-07-1238 JF                      3243682_1.DOC

**b.      The pleaded facts do not support an inference that the November 25, 2003 grants were intentionally backdated**

As shown above, the only challenged grants that can survive the applicable statute of repose are those made on November 25, 2003, with an exercise price of $25.16.  The CAC, however, fails to plead facts with particularity to support an inference that these grants were backdated, much less *intentionally* backdated.[23]  They ask the Court to infer these grants were intentionally backdated based solely on stock price performance.  *See* CAC, Ex. C2.  As Judge Chesney explained in dismissing a complaint, it is not enough for plaintiffs to claim backdating because options "were dated 'just after a sharp drop' in [company's] stock and 'just before a substantial rise.'"  *In re Linear Tech. Corp. Deriv. Litig.*, No. C-06-3290, 2006 WL 3553024, at *3 (N.D. Cal. Dec. 7, 2006).[24]  Plaintiffs' theory here should fare no better.  Indeed, all but one of the Forms 4 reporting these grants were filed within two business days.  *See* Ex. G & n. 12, *supra.*  In addition, Rambus stock price was *below* $25.16 for seven preceding consecutive trading days.[25]  *See F5 Networks*, 2007 WL 2476278, at *9 ("Had the directors truly backdated their options . . . the directors would have likely chosen [earlier date] as a grant date, when [company] stock closed" below the option exercise price).

_____

(...continued from previous page)
probative of scienter.  *See Morgan v. AXT, Inc.*, Nos. C04-4362, C05-5106, 2005 WL 2347125, at *14 (N.D. Cal. Sep. 23, 2000) ("Management changes 'are not in and of themselves evidence of scienter.'") (quoting *In re Cornerstone Propane Partners, L.P.,* 355 F. Supp. 2d 1069, 1092 (N.D. Cal. 2005)).

[23] Plaintiffs' allegations, in fact, support the opposite conclusion:  "In October 2003, the Stock Option Committee was dissolved and the backdating, and grant document falsification practices largely ceased."  CAC ¶ 44.

[24] *See also In re Openwave Sys. Inc. S'hldrs Deriv. Litig.*, No. C 06-03468, 2007 WL 1456039, at *8 (N.D. Cal. May 17, 2007) (plaintiffs' "20 trading day analysis," comparing the 20 day return on 21 handpicked option grants, "does not support a reasonable inference of backdating"); *In re Computer Sciences Corp. Deriv. Litig.*, No. CV06-05288, 2007 WL 1321715, at *14 (C.D. Cal. Mar. 27, 2007) (plaintiffs' analysis "that purports to show that the options grants invariably preceded known rises in [company] stock price" did not present a "compelling picture" of backdating); *F5 Networks*, 2007 WL 2476278, at *14.

[25] The closing price of Rambus stock on November 14, 2003 was $25.00; $24.44 on November 17; $24.04 on November 18; $24.90 on November 19; $24.19 on November 20; and $24.99 on November 21 and 24.  *See* Ex. M.

1

           **c.**      **The individual defendants' stock sales do not strengthen
plaintiffs' otherwise insufficient scienter allegations**

2

3        Finally, defendants' sales of Rambus stock do not strengthen plaintiffs' otherwise

4  insufficient scienter allegations.  While plaintiffs characterize defendants' trades from 2003

5  through 2006 as "Insider Sales" (CAC, Ex. E2), only "the 2006 insider sales" are alleged to have

6  been "made while in possession of material non-public information."  *Id.* ¶ 70.  In order to raise a

7  strong inference of scienter, plaintiffs must show that defendants' sales were "so egregious" and

8  out of line with prior conduct as to constitute strong evidence of conscious misbehavior.  *Silicon*

9  *Graphics,* 183 F.3d at 974.  Plaintiffs have not carried their burden here.

10       The CAC, like its defective predecessors, fails to specify *what* non-public material

11  information each selling-defendant possessed at the time of each challenged sale.  The blanket

12  assertion that the selling defendants sold "while in possession of material non-public information

13  such as Rambus 'backdating practices', false financial statements, [and] its 'submarine patent'

14  conduct" (CAC ¶ 70) is insufficient.  Nor is it sufficient to claim, without context, that "[t]he

15  extremely heavy insider trading activity just before the revelation of materially adverse

16  backdating practices is sufficient to create a strong inference of scienter."  *Id.*  To be probative of

17  scienter, trading must be "unusual" or "suspicious" – that is, *only* when it is "'dramatically out of

18  line with prior trading practices at times calculated to maximize the personal benefit from

19  undisclosed inside information.'"  *Silicon Graphics*, 183 F.3d at 986 (citation omitted).  The

20  CAC fails to show anything unusual or suspicious in the stock sales.

21       For example, while Mr. Mooring is alleged to have sold a large amount of Rambus stock,

22  his sales are not unusual or suspicious because the vast majority occurred shortly before he

23  resigned as a director in May 2006.  *See In re Read-Rite,* 115 F. Supp. 2d at 1184 ("the sale of

24  stock in conjunction with the departure of a high level executive also is insufficient to show

25  scienter").  The same is true of Mr. Eulau, who left early in 2006.  Dr. Farmwald's 2006 trades

26  are consistent with – indeed, smaller than – his prior sales, which also negates an inference of

27

28

1   fraud.[26]  Significantly, Mr. Tate – on whom plaintiffs focus much of their allegations – is not

2   alleged to have sold any stock in 2006 (*see* CAC, Ex. E2), which further undermines plaintiffs'

3   theory of fraud.  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094 (9th Cir. 2002) (that CEO,

4   who was in best position to know of true facts, sold only 13% negates inference of scienter).[27]

5          **D.      Allegations Regarding Rambus' Patent Strategy and Related Litigation
                    Risks Still Fail To Support A Claim Under Rule 10b-5**

6

7          As previously mentioned, it appears that plaintiffs have substantially abandoned their

8   claims based on Rambus' patent strategy and related litigation.  The allegations on this subject

9   are embodied in just five paragraphs in the CAC, which allege that:  (a) on August 2, 2006, the

10  FTC found that Rambus engaged in intentional deception of the DRAM manufacturers;

11  (b) Rambus concealed this deception from 2000 until August 2006; (c) consequently, Rambus

12  was able to assert an "unimpaired monopoly over synchronous DRAM in early 2000"; (d) which

13  caused Rambus stock to be inflated in 2000 and 2006.  CAC ¶¶ 5, 30, 31, 119, 125.  To the

14  extent plaintiffs are claiming the defendants violated Rule 10b-5 by concealing "the JEDEC

15  patent ambush," it must be dismissed with prejudice.

16         Not only do these claims suffer an insurmountable statute of limitations problem,[28]

17  plaintiffs have failed to specify any actionable misstatements.  This is not surprising as Rambus

18  has fully disclosed the risks associated with its patent strategy and related litigation for years.

19  For example, each Form 10-K since 2000 has detailed disclosures outlining the risks related to

20  the patent infringement actions and counterclaims asserted therein, other related litigation and

21  _____

22      [26] Dr. Farmwald's 2006 sales of 192,700 shares are consistent with his prior sales of 440,000
     shares in 2003, 350,000 shares in 2004 and 200,000 shares in 2005.  *See* CAC Ex. E2.

23      [27] Not only do plaintiffs fail to adequately plead Rambus' scienter, they allege facts which
24   belie such an inference.  Plaintiffs allege Rambus repurchased some of its stock in early 2006 to
     "help" certain defendants and officers sell their stock at inflated prices.  CAC ¶ 89.  To the
25   contrary, as Rambus disclosed, the 2006 stock repurchase was part of a program authorized by
     the Board in October 2001.  *See* Ex. N at 13.  Rambus' stock repurchase program is dramatically
26   at odds with any suggestion that it knew its stock was artificially inflated because it makes "no
     sense to purchase [] stock if defendants knew the prices to be inflated."  *Mathews v. Centex
     Telemanagement, Inc.*, No. C-92-1837, 1994 WL 269734, at *8 (N.D. Cal. June 8, 1994).

27      [28] As discussed in Section III.A. above, plaintiffs have been on notice of these allegations for
28   many years.  Plaintiffs' Rule 10b-5 claims on this basis are, therefore, time-barred.

the FTC action.  *See* Ex. C at 6, 13-14; Ex. O at 7, 51; Ex. E at 6, 14-18; Ex. F at 6, 67-73; Ex. P

at 8-9, 70-78; Ex. Q at 10-11, 74-81.  A company is simply not required to speculate on the

possible consequences of its conduct, even when that conduct is potentially unlawful.  *See City*

*of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1264-68 (10th Cir. 2001) (dismissing claim

based on failure to make earlier disclosure of lawsuit; court "cannot find Defendants liable under

the [Exchange] Act for failing to anticipate the full extent of their potential exposure in the

[litigation].") [29]  Such speculation would be particularly unreasonable here where multiple courts

have held that the alleged JEDEC conduct was not unlawful.[30]

Plaintiffs also have failed to allege facts giving rise to a "strong" inference of scienter on

the part of any defendant, including Dr. Farmwald, with respect to the purported patent strategy

deception.  In fact, while the prior complaint averred (inadequately) that the alleged deception

was "common knowledge at Rambus among the executives" (CC ¶¶ 45, 47, 49), the CAC does

not even go that far.  It pleads absolutely no allegations of scienter on the part of any defendant.

**E.**       **The CAC Fails To State A Claim For "Scheme" Liability**

Where, as here, plaintiffs allege liability for false statements and for a scheme (*see* CAC

¶¶ 128-29), plaintiffs' scheme allegations must go *beyond* the misstatement allegations; plaintiffs

must "allege that the defendant engaged in a manipulative or deceptive scheme or conduct that

encompasses acts beyond misrepresentations."  *In re Royal Dutch/Shell Transport.* No. 04-374,

---

[29] *See also Gompper v. VISX, Inc.*, 298 F.3d 893, 895-96 (9th Cir. 2002) (dismissing securities suit based on claim that defendants should have known a patent infringement suit would result in a finding that company's patent was invalid; plaintiffs failed to adequately allege defendants knew this would be the result); *Ieradi v. Mylan Labs, Inc.*, 230 F.3d 594, 599 (3d Cir. 2000) (disclosure of FTC investigation was "more than sufficient" to inform investors that alleged anticompetitive activity could subject company liability).

[30] *See, e.g., Rambus, Inc. v. Infineon Technologies AG*, 318 F.3d 1081, 1102-06 (Fed. Cir. 2003) (Rambus had not violated any JEDEC duties); Ex. R at 10 (Judge Whyte's July 17, 2006 Order in *Hynix* holding that JEDEC's policies were "not definite enough to make clear to Rambus what disclosures it was required to make, if any"); Ex. S at 5 (Judge Jordan's June 15, 2006 Opinion in the *Micron* case, which held "Rambus's actions were within the law, for the reasons described by the Federal Circuit").

To the extent plaintiffs rely on the FTC's reversal of the Initial Decision of its Chief Administrative Law Judge, such reliance is unwarranted, since (among other things) Rambus is currently pursuing an appeal.  *See, e.g.*, Ex. T; Ex. U.

2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006).  The Ninth Circuit explained that for "scheme" liability, "[i]t is not enough that a transaction in which a defendant was involved had a deceptive purpose and effect."  *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006).  Rather, "the defendant must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."  *Id.*

The CAC alleges two schemes, option backdating and the "submarine patent" deception.  It, however, fails to specify each individual defendant's alleged role in these alleged schemes and is devoid of any facts showing that any of these defendants' supposed conduct "had the principal purpose and effect" of creating a false appearance in deceptive transactions as part of a scheme to defraud.  Thus, the Court should dismiss plaintiffs' claim under Rule 10b-5(a) & (c).

## IV.     PLAINTIFFS' OTHER FEDERAL CLAIMS ALSO FAIL

### A.     The CAC Fails To State A Claim Under Section 18 (Count III)

Plaintiffs also allege that Dr. Farmwald, among others, violated §18 of the Exchange Act by causing "materially false 10-K's to be filed with the SEC and disseminated to the public from 1999 through 2006."  CAC ¶ 149.  Section 18(a) "provides an express right of action for a false or misleading statement contained in a document [filed] with the SEC . . . in favor of any person who, 'in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement. . . .'"  *In re Genentech, Inc. Sec. Litig.*, No. C-88-4038, 1989 WL 106834, at *4 (N.D. Cal. July 7, 1989) (quoting 15 U.S.C. § 78(r)).

A claim under §18(a) must be brought "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued."  15 U.S.C. § 78r(c).  Thus, plaintiffs cannot state a claim for alleged misstatements in Rambus' 10-K filings prior to March 1, 2004 as they are barred by the three-year statute.  This would encompass all 10-Ks up to and including the 2003 10-K, filed on February 13, 2004.  Claims based on alleged misstatements in the remaining challenged 10-Ks – the 2004 and 2005 10-Ks – are barred by the one-year statute.  The 2004 10-K was filed on February 17, 2005, and the 2005 10-K on February 21, 2006.  As discussed above in Section III.A., plaintiffs were on notice of the facts underlying their claims long before February 2006.  Indeed, plaintiffs allege they

1   became suspicious of Rambus' statements as early as 2005.  *See* CAC ¶ 125.  Thus, plaintiffs'

2   §18(a) claims are time-barred in their entirety.

3        Also, plaintiffs have not pleaded any facts to show that Dr. Farmwald would be liable

4   under §18.  As discussed above, plaintiffs have not pleaded facts to suggest that Dr. Farmwald

5   participated in or even knew of any alleged wrongdoing.  Count III should be dismissed.

6        **B.      The CAC Fails To State A Claim Under Section 14(a) (Count II)**

7        Plaintiffs also allege that Dr. Farmwald, among others, violated § 14(a) of the Exchange

8   Act and Rule 14a-9 by making misrepresentations and omissions in the 2001 through 2005 proxy

9   statements.  CAC ¶¶ 139, 141.  To state a § 14(a) claim, a plaintiff must plead facts to show that

10  defendants made a false or misleading statement of material fact in a proxy statement with the

11  requisite level of culpability, and that the misstatement was an essential link in the

12  accomplishment of a transaction proposed in the solicitation.[31]  As shown below, plaintiffs'

13  § 14(a) claim fails at the outset on any one of the following three independent grounds.

14       **1.      Plaintiffs' Section 14(a) Claim is Derivative in Nature**

15       Plaintiffs allege the 2001-2005 proxy statements were false because they understated

16  "executive compensation," due to the "option backdating scheme."  CAC ¶¶ 141-42.  Plaintiffs

17  purport to assert a direct claim based on these allegations.  *See id.* ¶ 146.  Whether a claim is

18  direct or derivative is governed by the law of the state of incorporation, which, in this case, is

19  Delaware.  In order to bring a direct claim, a plaintiff must have experienced a wrong that is

20  "separate and distinct from that suffered by other shareholders, . . . or a wrong involving a

21  contractual right of a shareholder, . . . which exists independently of any right of the

22  corporation."  *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,* 845 A.2d 1031, 1035 (Del. 2003).

23  A stockholder's claimed direct injury "must be *independent* of any alleged injury to the

24  corporation."  *Id.* at 1036 (emphasis added).

25

26

_____

27       [31] *See Verisign,* 2007 WL 2705221, at *34; *In re Ariba, Inc. Sec. Litig.,* No. C03-00277, 2005
    WL 608278, at *8 (N.D. Cal. Mar. 16, 2005) (citing *Desaigoudar v. Meyercord,* 223 F.3d 1020,
28  1022 (9th Cir. 2000)).

1    While some § 14(a) claims may be brought directly, plaintiff's claim for over-

2  compensation is a classic derivative claim.  *See Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006)

3  ("Normally, claims of corporate overpayment are treated as causing harm solely to the

4  corporation and thus, are regarded as derivative.").  "The reason . . . is that the corporation is

5  both the party that suffers the injury (a reduction in its assets or their value) as well as the party

6  to whom the remedy (a restoration of the improperly reduced value) would flow."  *Id.*  Here, the

7  thrust of the allegations is that the recipients of the tainted options were overpaid.  Such

8  allegations necessarily involve an injury to the corporation in that the alleged overpayment

9  entails a reduction in corporate assets.  Accordingly, the § 14 claim is derivative and should be

10  dismissed.

11           **2.       Plaintiffs Lack Standing to Assert Their Section 14(a) Claim**

12    Even if they had a direct claim, plaintiffs face another problem:  lack of standing.  A

13  plaintiff cannot state a § 14(a) claim when he was not a shareholder at the time of the vote on the

14  matters solicited in the relevant proxy statement.[32]  Plaintiffs provide no evidence of their

15  Rambus stock ownership for 2001 through 2004, let alone their ownership on the record date for

16  the annual shareholder meetings during those years.  Thus, even if not time-barred, plaintiffs lack

17  standing to pursue § 14(a) claims based on the 2001-2004 proxy statements.

18    To be able to vote at the 2005 shareholder meeting, one needed to be a Rambus

19  stockholder as of March 7, 2005.  *See* Ex. V.  Based on their submission, the first time plaintiffs

20  purchased Rambus stock in 2005 was on March 11, when they purchased 3,500 and sold 500

21  shares that same day.  *See* CAC, Ex. L5.  Thus, they were not shareholders on the record date of

22  March 7, 2005 and therefore, lack standing to sue pursuant to the 2005 proxy statement.

23           **3.       All of Plaintiffs' Section 14(a) Claims are Time-Barred**

24    The § 14(a) claim suffers from another fatal defect:  it is untimely.  The statute of

25  _____

26    [32] *See Blau v. Harrison*, No. 04 C 6592, 2006 WL 850959, at *9 (N.D. Ill. Mar. 24, 2006)
   (dismissing §14(a) action with respect to class members who were not stockholders on the record
27  date for voting the proxy because they lacked standing); *Smillie v. Park Chem. Co.*, 466 F. Supp.
   572, 575 (E.D. Mich. 1979) (dismissing §14(a) claim with respect to three of four proxies on
28  standing grounds because plaintiff did not own voting stock during those years).

1   limitations for such claims is the earlier of one year after the discovery of the violation or three

2   years from the alleged violation.[33]  Neither prong is subject to tolling.[34]  The three-year statute of

3   repose bars all claims based on proxies issued before March 1, 2004.  *See Verisign,* 2007 WL

4   2705221 at *35 (§ 14(a) claim based on allegedly mispriced options was barred by the three-year

5   statute of repose).  Claims based on the 2004 and 2005 proxy statements – filed on March 19,

6   2004 and March 18, 2005, respectively – are precluded by the one-year statute of limitations.

7   All of the facts on which plaintiffs base their claims – the number of options granted, their

8   exercise prices and related prices – were publicly available before the 2005 proxy statement was

9   even filed.  These facts together were sufficient to put plaintiffs on notice of their claims,

10  particularly given plaintiffs' admission that they "closely" examined "the options grants and

11  compensation expenses reported in the . . . 2004 and 2005 Proxy Statements."  CAC ¶ 125.

12          In sum, each of the foregoing defects, alone, warrants the dismissal of Count II.[35]

13          **C.      The CAC Fails To State A Claim Under Section 20(a) (Count IV)**

14          Because plaintiffs have failed to allege a primary violation of the federal securities laws,

15  their claim against Dr. Farmwald, among others, under § 20(a) of the Exchange Act fails as well.

16  *See Howard v. Everex,* 228 F.3d 1057, 1065 (9th Cir. 2000) ("In order to prove a prima facie

17  case under § 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws. . .;

18  and (2) that the defendant exercised actual power or control over the primary violator. . . .").  In

19  addition, plaintiffs do not plead sufficient facts demonstrating that Dr. Farmwald was active in

20  _____

21  [33] *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993); *In re Exxon
    Mobil Corp. Sec. Litig.*, 500 F.3d 189, 194-95 (3rd Cir.); *Virginia M. Damon Trust v. North
22  Country Fin. Corp.*, 325 F. Supp. 2d 817, 823 (W.D. Mich. 2004).

23  [34] *See Lampf*, 501 U.S. at 363-64 (the federal securities laws impose a statute of repose that is
    inconsistent with equitable tolling); *Hamilton v. Cunningham*, 880 F. Supp. 1407, 1411 (D. Colo.
24  1995) ("The three-year limitations period [for § 14(a) claims] runs from the date of the actual
    violation and constitutes the maximum time period in which a federal securities claim may be
    brought.").

25  [35] Because the § 14(a) claim sounds in fraud, Rule 9(b) and the PSLRA require that plaintiffs
26  plead facts with particularity to support such claim.  *See* Section II, *supra.*  Plaintiffs have not
    done so.  However, in the interest of brevity and because plaintiffs have failed to satisfy the
27  fundamental requirements as discussed above, Rambus and Dr. Farmwald have not briefed the
    other defects of the § 14(a) claims, including but not limited to plaintiffs' failure to sufficiently
28  allege an "essential link" and scienter.  In the event the Court were to hold otherwise, Rambus

                                                                                          (continued...)

1   the day-to-day affairs of Rambus or that he exercised specific control over the preparation and

2   release of the challenged statements.  *See McKesson*, 126 F. Supp. 2d at 1277; *Howard*, 228 F.3d

3   at 1067 n.13.  Accordingly, the § 20(a) claim against him should be dismissed.

4   **V.      THE CAC FAILS TO STATE A CLAIM FOR COMMON LAW FRAUD**

5           In addition to the federal claims, plaintiffs charge Rambus and Dr. Farmwald, among

6   others, with common law fraud (Count V).  Predicated on alleged option backdating, plaintiffs

7   claim the defendants "intentionally produced and distributed materially false Rambus' annual

8   10-K and quarterly 10-Q financial statements from 1999 to 2006."  CAC ¶ 159.  Plaintiffs'

9   generalized and conclusory allegations are inadequate to state a claim for fraud.

10          Even a cursory reading of the CAC reveals it does not satisfy Rule 9(b), which requires

11  "the circumstances constituting fraud . . . shall be stated with particularity."[36]  Those

12  "circumstances" include the precise "time, place, and nature of the misleading statements,

13  misrepresentations, or specific acts of fraud."  *Sunnyside Dev. Co. v. Opsys Ltd.*, No. C-05-0553,

14  2005 WL 1876106, at *4, 5 (N.D. Cal. Aug. 8, 2005) (quoting *Kaplan v. Rose,* 49 F.3d 1363,

15  1370 (9th Cir. 1994)).  Where a fraudulent scheme is alleged and multiple defendants are named,

16  plaintiffs must, at a minimum, identify the "manner of each fraud plus the role of each defendant

17  in each scheme."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).[37]

18          As previously discussed, plaintiffs have not identified what role any (much less each)

19  defendant had in the alleged backdating and preparation of the allegedly false financial

20  statements and instead, improperly lump them together.  Plaintiffs' failure to satisfy Rule 9(b)

21  mandates dismissal of Count V.  *See Semegen,* 780 F.2d at 731 (because plaintiffs' failure to

22

23          (...continued from previous page)
    and Dr. Farmwald reserve the right to raise the other infirmities of plaintiffs' § 14(a) claims.

24      [36] The purpose of Rule 9(b) is to "ensure[] that allegations of fraud are specific enough to

25  give defendants notice of the particular misconduct which is alleged to constitute the fraud
    charged so that they can defend against the charge and not just deny that they have done
    anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

26      [37] *See also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not

27  allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to
    differentiate their allegations when suing more than one defendant . . . and inform each defendant

28  separately of the allegations surrounding his alleged participation in the fraud.'").

1  satisfy Rule 9(b) "is dispositive here – making the dismissal proper – we need not discuss the

2  other grounds asserted by each defendant").[38]

3        Even if the Court were to proceed further, dismissal is proper because plaintiffs have not

4  adequately pleaded each element of their fraud claim:  (1) a misrepresentation by defendant, (2)

5  defendant's knowledge of falsity, (3) intent to induce reliance, (4) plaintiffs' actual reliance, and

6  (4) resulting damage.  *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1216 (2003).  Plaintiffs'

7  allegations of reliance are boilerplate.  They simply assert "Plaintiff justifiably relied on the false

8  statements alleged" (CAC ¶ 162), which is undermined by their incessant trading practices.  As

9  the California Supreme Court made clear, "mere conclusionary allegations that . . . plaintiffs

10 relied on the omissions in making such purchase are insufficient." *Goodman v. Kennedy,* 18 Cal.

11 3d 335, 347 (1976).  Instead, "specific pleading [of actual reliance] is necessary." *Mirkin v.*

12 *Wasserman,* 5 Cal. 4th 1082, 1092 (1993).  Nor do plaintiffs adequately plead facts to show that

13 any defendant knew the statements at issue were false *and* intended to induce plaintiffs' reliance.

14 *Olson*, 106 Cal. App. 4th  at 1216; *Goodman*, 18 Cal. 3d at 347.  The CAC merely assumes that

15 defendants acted with a fraudulent mental state.  Accordingly, Count V must be dismissed.

16 **CONCLUSION**

17       Plaintiffs have now had, collectively, *eight* opportunities to plead a claim against Rambus

18 and Dr. Farmwald and have failed to do so.  With the filing of Rambus' restatement, Rambus has

19 made all material disclosures regarding its option granting practices.  Further amendment would

20 be futile.  The CAC should be dismissed with prejudice.

21 Dated:  December 3, 2007          WILSON SONSINI GOODRICH & ROSATI
                                  Professional Corporation

22

23                                     By: /s/ Ignacio E. Salceda
                                          Ignacio E. Salceda

24                                   Attorneys for Defendants Rambus Inc. and P. Michael
                                  Farmwald

25

26     [38]*See also Yang v. Xiong*, No. S-06-1306, 2006 WL 3191173, at *2 (E.D. Cal. Nov. 2, 2006)
(dismissing fraud claims because plaintiff "does not attribute conduct to particular defendants or

27 provide a sufficiently specific explanation of what each defendant did and when"); *Bruns v.
Ledbetter*, 583 F. Supp. 1050, 1051 (S.D. Cal. 1984) (dismissing claims where plaintiffs treated

28 defendants as a "monolithic enterprise").