**E-Filed 04/17/2008**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JAMES M. KELLEY, MIKI W. LARSSON, and DOUGLAS B. KELLEY<br>                       Plaintiffs,<br><br>       v.<br><br>RAMBUS, INC., et al.,<br><br>                   Defendants. | Case Number C 07-01238 JF<br><br>ORDER[1] GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART<br><br>[re: docket nos. 159, 160, 161, 163, 165, 167, 169, 170, 172, 189, 192] |

Defendants Rambus, Inc. ("Rambus"), Pricewaterhouse Coopers ("PwC"), John Danforth, Robert Eulau, Edward Larsen, Geoff Tate, David Mooring, Paul Michael Farmhand, Bruce S. Dunlevie, and William Davidow[2] move to dismiss the Consolidated Amended Complaint ("CAC") filed by Plaintiffs James M. Kelley, Miki W. Larsson, and Douglas B. Kelley ("collectively "Plaintiffs"). For the reasons discussed below, the motions will be granted. Leave to amend will be granted as to Plaintiffs' claims under Sections 14(c) and 18(a) of the Securities Act of 1934. However, because the Court concludes that there is no reasonable

---

[1] This disposition is not designated for publication and may not be cited.

[2] Rambus, PwC, and the Individual Defendants are referred to in this Order collectively as "Defendants."

1  possibility that Plaintiffs would cure the defects in their remaining claims if leave to amend were

2  granted, leave to amend those claims will be denied.

3  ## I. BACKGROUND

4  Plaintiffs James M. Kelley and Miki W. Larsson initiated this action on March 1, 2007,

5  alleging that they were Rambus shareholders who were damaged as a result of securities fraud on

6  the part of the Defendants.  After filing their initial complaint, which was 161 pages in length,

7  Kelley and Larsson amended their complaint three times without seeking leave of court or

8  Defendants' consent.  Plaintiff Douglas B. Kelley filed a separate complaint[3] on May 8, 2007,

9  which he amended on June 15, 2007.  The Court consolidated the two actions on June 25, 2007

10 and set a filing date for a consolidated complaint and a briefing schedule for any motion to

11 dismiss.

12 Plaintiffs filed their Consolidated Complaint on July 24, 2007.  On August 10, 2007,

13 Defendants moved to dismiss the Consolidated Complaint.  On October 15, 2007, the Court

14 granted Defendants' motion, finding that the 295-page Consolidated Complaint violated Federal

15 Rule of Civil Procedure 8.  Plaintiffs were granted leave to amend and filed the operative CAC

16 on November 13, 2007.

17 On December 3, 2007, Rambus and Farmhand filed the instant motion to dismiss the

18 CAC pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and

19 Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Individual Defendants Larsen, Eulau,

20 Mooring, Danforth, Tate, Davidow, and Dunlevie join Rambus's motion.  Defendants Larsen,

21 Mooring, Danforth, and Eulau move separately to dismiss the CAC as to them.  PwC also moves

22 to dismiss the CAC pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  The

23 Court heard oral argument on all of the motions on March 14, 2007.

24 ## II. LEGAL STANDARD

25 A complaint may be dismissed for failure to state a claim upon which relief can be

26 granted for one of two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts

27

28 [3] Case No. C 07-02455 JF.

2

1   under a cognizable legal theory. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v.*

2   *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of a motion to

3   dismiss, all allegations of material fact in the complaint are taken as true and construed in the

4   light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752,

5   754 (9th Cir. 1994). A complaint should not be dismissed "unless it appears beyond doubt the

6   plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg*,

7   18 F.3d at 754. However, the Court "is not required to accept legal conclusions cast in the form

8   of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

9   *Id*. at 754-55.

## III. DISCUSSION

11       The CAC alleges violations of 10(b), 14(a), 18(a) and 20(a) of the Securities Act of 1934

12   and SEC rules 10b-5 and 14a-9 (Counts I-IV), a state-law claim for common-law fraud (Count

13   V) against all defendants and a state-law claim for negligent misrepresentation against PwC

14   (Count VI).

15       1.    Loss Causation

16       Losses caused by business or economic conditions unrelated to alleged securities fraud

17   are not recoverable. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343-45 (2005). The loss

18   causation requirement applies to each of Plaintiffs' claims. *See, e.g., Dura*, 544 U.S. at 342, 346-

19   48 (finding that Section 10(b) and common-law fraud claims require plaintiffs to plead and prove

20   they have suffered loss and that their losses were caused by alleged fraud); *In re AOL Time*

21   *Warner, Inc. Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 213 (S.D.N.Y. 2004) (finding that

22   loss causation is an element of a Section 14(a) claim); *Argent Classic Convertible Arbitrage*

23   *Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 685 (E.D. Pa. 2004) (finding that loss

24   causation is an element of a Section 18 claim).

25       Plaintiffs seek to recover investment losses caused by Defendants' alleged fraud.

26   Plaintiffs allege that the losses occurred in 2000, 2001, 2004, 2005 and 2006. Opp. at 8.

27   Defendants argue that Plaintiffs have "a serious loss causation problem" based on these

28   allegations because they cannot tie their losses from sales of Rambus stock to the dates on which

3

1   any of Defendants' alleged misrepresentations were made to the market.

2       Under *Dura*, a plaintiff may recover only for investment losses that followed in the wake

3   of, and thus can be said to have been caused by, a disclosure of the alleged fraud. *Dura,* 544 U.S.

4   at 345-46.  Defendants argue correctly that at the pleading stage, Plaintiffs must do more than

5   speculate; rather Plaintiffs must articulate a plausible factual theory as to the causal connection

6   between an alleged misrepresentation and their claimed loss. *See id.* at 347.

7       With respect to their alleged losses in 2005, Plaintiffs claim that the decline in the value

8   of Rambus stock was caused by a convertible bond placement. *See* CAC ¶117.  As to their

9   alleged losses in 2006, Plaintiffs allege that their first loss occurred on April 21, 2006, following

10  a disappointing earnings report on April 19, 2006.  CAC ¶ 121.  Plaintiffs allege that their losses

11  in 2000 and 2001 were caused by the subsequent materialization of risks that had been concealed

12  by Rambus as well as by the actual release of news related to such concealment.  Opp. at 9.

13  However, Plaintiffs acknowledge in their opposition to the instant motion that Rambus first made

14  corrective disclosures relevant to the 2006 loss on May 30, 2006.  Opp. at 4, 16.  With respect to

15  their alleged losses in 2000 and 2001, Plaintiffs seek to avoid the statute of limitations by

16  claiming that Rambus's alleged concealment prevented them from discovering their claims.

17      Viewing Plaintiff's allegations as to loss causation as favorably as is possible, it is

18  apparent that Plaintiffs allege inconsistent positions as to when the truth emerged.  The CAC

19  does not allege sufficient facts to show that any specific representation caused any specific loss

20  for which Plaintiffs seek to recover.  Because Plaintiffs have yet to allege loss causation

21  adequately in any of their multiple and voluminous pleadings, their claims are subject to

22  dismissal for this reason alone.  Because loss causation is an essential element of each of

23  Plaintiff's claims, it must be addressed in any subsequent amendment permitted by this order.

24          2.      Count I: 10b-5 Claim

25      Section 10(b) of the Exchange Act makes it unlawful for any person, by means of any

26  instrumentality of interstate commerce, the mails, or any facility of any national securities

27  exchange, to use or employ "any manipulative or deceptive device or contrivance in

28  contravention of such rules and regulations as the Commission may prescribe" in connection

4

with the purchase or sale of any security registered on a national securities exchange.  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated by the Securities and Exchange Commission ("SEC") under 10(b), makes it unlawful to:  (a) "employ any device, scheme or artifice to defraud"; (b) "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading"; or (c) "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.

The Supreme Court has held that these provisions give rise to liability for two types of conduct:  (1) the making of a material misstatement or omission or (2) the commission of a manipulative act.  *Central Bank of Denver v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994).  Plaintiffs allege that Rambus, Dunlevie, Davidow, Farmhand, Tate, Mooring, Eulau, Larsen, and Danforth committed fraud on the market by misleading the inventing public, including plaintiffs, by means of a deceptive patent strategy and by granting backdated stock options.  They allege that these acts artificially inflated the market price of Rambus common stock and caused Plaintiffs to purchase Rambus shares at such inflated prices.

<u>a.</u>    Rambus's Patent Strategy

The applicable limitations period for a 10(b) claim is the earlier of two years after discovery of the violation or five years after the alleged violation.  28 U.S.C. §§ 1658(b)(1), (2); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005).  Plaintiffs commenced this action on March 1, 2007.  Accordingly, the portion of Plaintiffs' 10b-5 claim that is based upon misstatements or alleged deception regarding Rambus's patent strategy before March 1, 2002 is barred by the five-year statute of response.

Plaintiffs claim that they were not put on notice of a claim until the Federal Trade Commission issued a ruling in August 2006 concerning Rambus's conduct with respect to the JEDEC standard.  Plaintiffs allege in the CAC that "[t]he concealment of the JEDEC patent ambush from the public permitted Rambus to assert an 'unimpaired' monopoly over synchronous DRAM beginning in January 2000 with the Hitachi patent infringement lawsuit."  CAC ¶ 31.

5

However, in their previous consolidated complaint, Plaintiffs acknowledged that similar

allegations have been in the public domain since March 2000, when in a patent infringement suit

Hitachi filed counterclaims against Rambus alleging fraud, deceptive trade practices and

misrepresentation in connection with Rambus's JEDEC activities.  See, e.g., CC ¶ 624(a), 631.

Other lawsuits alleging similar allegations were filed against Rambus by other companies in

August 2000.  See CC ¶624(e), (i), (j).  As a matter of law, Plaintiffs were on inquiry notice of

these prior cases as soon as they were filed.  *See Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir.

1993) (finding that information about prior litigation in SEC filings placed investors on inquiry

notice.)  Accordingly, to the extent that Plaintiffs' section 10(b)(5) claim is based on Rambus's

patent strategy, it is time-barred and cannot be saved by amendment.

             b.     Option Backdating

                  1.     Statute of Limitations

        As to Plaintiffs' claim of option backdating, the five-year statute of repose begins to run

on the date the option grant was made.  *Durning v. Citibank Intern.*, 990 F.2d 1133, 1136 (9th

Cir. 1993).  Defendants argue that of the options challenged by Plaintiffs, only those granted on

November 25, 2005 survive the statute of repose.  However, Defendants also argue that claims

based on the 2005 grant are precluded by the two-year statute of limitations because all of the

facts necessary to support the claim were available to the public shortly after issuance of the

grant.  In their opposition papers, Plaintiffs agree to limit their 10(b) claim to grants made in

2005 and 2006.

                  2.     Reliance

        Defendants also assert that Plaintiffs have not alleged reliance.  Plaintiffs claim that they

relied on Rambus's 2005 Form 10-K.  However, Defendants note correctly that this assertion is

"belied by [Plaintiffs'] averment that 'earlier losses [in 2000 and 2001] caused the Plaintiffs to

examine closely the options grants and compensation expenses reported in the 2004 and 2005 10-

K and the 2004 and 2005 Proxy Statements in making and retaining Rambus securities in 2005

and 2006.'" Mem. at  9; CAC ¶ 125.  It appears from Plaintiffs' own allegations that Plaintiffs

were day traders who sought to profit from the short term volatility in Rambus's stock price.

6

1        3.     Scienter

2        Finally, Defendants argue that Plaintiffs have failed to allege the scienter required for

3   Section 10(b)(5) claims.  In the Ninth Circuit, a Section (10)(b)(5) plaintiff must allege specific

4   facts, not conjecture or assumptions, showing an actual intent to defraud or recklessness

5   involving "some degree of intentional or conscious misconduct."  This state of mind has been

6   characterized by the Ninth Circuit as "deliberate recklessness."  *In re Silicon Graphics Inc. Sec.*

7   *Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).  Plaintiffs allege that paragraphs 56-87 of the CAC

8   plead scienter as to each Defendant.  However, these paragraphs set forth either generalized

9   allegations of wrongdoing or unsupported legal conclusions that the Defendants knowingly

10  engaged in wrongdoing.

11        3.     Other Federal Claims

12             a.     Section 14(a) claim

13        Plaintiffs allege that Farmhand, Horowitz, Kennedy, and Hughes violated 14(a) of the

14  Exchange Act and Rule 14a-9 by making misrepresentations and omissions in proxy statements

15  between 1998 and 2006.  These claims are derivative in nature.  Defendants argue that Plaintiffs

16  lack standing to bring such a claim because they have not alleged that they owned shares of

17  Rambus's stock with voting rights on the record date for the votes to which the subject proxy

18  statements pertain.

19        Despite the voluminousness of their allegations and their representations to the contrary

20  at oral argument, Plaintiffs do not allege anywhere in the CAC that they held stock with voting

21  rights on the record dates for voting at any of the annual stockholder meetings for any claim not

22  barred by the statute of limitations or statute of repose.  Those record dates are March 5, 2004,

23  March 7, 2005, and March 21, 2006.  Although the exhibits to the CAC include extensive trading

24  records, these records mix together puts and calls (that presumably are without voting rights)

25  with purchases and sales of stock.  Thus, at present, Defendants' argument that Plaintiffs lack

26  standing to bring a Section 14(a) claim has merit.  Plaintiffs clarify in their opposition papers that

27  they are asserting a Section 14(a) claim only as to 2005 and 2006.  Opp. at 10.  Even so, they still

28  fail to show they were Rambus shareholders of record as of March 7, 2005 (for the 2005

7

1   shareholder meeting) and March 21, 2006 (for the 2006 shareholder meeting).  Because it is

2   conceivable that this pleading defect could be cured by amendment, leave to amend will be

3   granted.

4                          b.       Section 18(a) claim

5           Plaintiffs allege that Defendants violated Section 18 of the Exchange Act by causing

6   "materially false 10-K's to be filed with the SEC and disseminated to the public from 1999

7   through 2006."  CAC ¶ 149.  Section 18(a) "provides an express right of action for a false or

8   misleading statement contained in a document [filed] with the SEC . . . in favor of any person

9   who, 'in reliance upon such statement, shall have purchased or sold a security at a price which

10  was affected by such statement . . . .'"  *In re Genentech, Inc., Sec. Litig.,* No. C-88-4038, 1989

11  WL 106834, at *4 (N.D. Cal. July 7, 1989).

12          Defendants argue that Plaintiffs' 18(a) claims are time-barred.  A section 18(a) claim

13  must be brought "within one year after the discovery of the facts constituting the cause of action

14  and within three years after such cause of action accrued."  15 U.S.C. § 78r(c).  Accordingly,

15  Plaintiffs may not bring such a claim based on misstatements in SEC filings prior to March 1,

16  2004, three years before the original complaint in the instant action was filed.  Plaintiffs state in

17  their opposition papers that they have limited their claims to the 10-K's filed in 2005 and 2006.

18  However, Defendants also argue that claims based on SEC filings prior to March 1, 2006 are

19  barred under the one-year statute because the facts constituting the cause of action were in the

20  public domain.  Because the Court cannot say with certainty that Plaintiffs could not plead

21  additional facts that would support a claim of delayed discovery, leave to amend this claim will

22  be granted.

23                          c.       Section 20(a)

24          Finally, Plaintiffs allege that a number of the Defendants are control persons under

25  § 20(a) of the Exchange Act.  That section  imposes joint and several liability on any "person

26  who, directly or indirectly, controls any person liable" for securities fraud, "unless the controlling

27  person acted in good faith and did not directly or indirectly induce" the violations.  15 U.S.C. §

28  78t(a).  However, because Plaintiffs have failed to allege a viable claim under Section 10(b)(5),

                                                8

1    there is no basis for asserting controlling person liability under § 20(a).

2           4.     Plaintiffs' State Law Claims

3                  a.     Fraud

4           Plaintiffs also assert a claim under California law for common-law fraud.  As discussed

5    above, Plaintiffs make no effort to distinguish among the many Defendants they have sued.

6    Rather, they lump all of the Defendants together and assume that, merely by virtue of

7    Defendants' association with Rambus, the entire group must have backdated option grants and

8    prepared false financial statements knowing at the time that the statements were false and with

9    the intent to induce Plaintiffs to buy Rambus stock.  These conclusions do not satisfy Rule 9(b).

10   Moreover, Plaintiffs have failed to plead actual reliance on any statement.

11                 b.     Negligent Misrepresentation

12          Negligent misrepresentation also is a form of fraud and therefore is subject to the

13   heightened pleading standards of Rule 9(b).  A plaintiff must plead "(1) a misrepresentation of a

14   past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with

15   intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and

16   justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5)

17   damages." *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (Cal. Ct. App. 1997).  Plaintiffs

18   assert a claim of negligent misrepresentation against PwC, alleging that for ten years, PwC failed

19   properly to audit Rambus's most significant expense, i.e., stock option grants.  CAC ¶ 168.  PwC

20   argues that Plaintiffs' claim for negligent misrepresentation should be dismissed because

21   California law does not permit a negligent misrepresentation claim against an auditor that

22   conducts a general audit by a plaintiff who participates in open-market transaction; Plaintiffs'

23   claim does not meet the heightened pleading requirements imposed by Rule 9(b); and Plaintiffs

24   have not adequately alleged reliance.  Plaintiffs do not address these arguments at all in their

25   opposition papers.

26                          **IV. LEAVE TO AMEND**

27          Leave to amend is to be granted with extreme liberality in securities fraud cases, because

28   the heightened pleading requirements imposed by the PSLRA are so difficult to meet.  *Eminence*

9

1   *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The Supreme Court has

2   articulated the applicable standard as follows:

3   > In the absence of any apparent or declared reason - such as undue delay, bad faith or
    > dilatory motive on the part of the movant, repeated failure to cure deficiencies by
4   > amendments previously allowed, undue prejudice to the opposing party by virtue of
    > allowance of the amendment, futility of amendment, etc. - the leave sought should, as
5   > the rules require, be "freely given."

6   *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court's failure to consider the *Foman*

7   factors and articulate why it has decided to deny leave to amend may constitute an abuse of

8   discretion in and of itself.  *Eminence*, 316 F.3d at 1052.  Ultimately, "[d]ismissal with prejudice

9   and without leave to amend is not appropriate unless it is clear on *de novo* review that the

10  complaint could not be saved by amendment.**"**  *Id.*

11          Mindful of this authority and for the reasons discussed above, the Court will grant

12  Plaintiffs leave to amend their claims pursuant to Sections 14(a) and 18(a).  While it is far from

13  clear that Plaintiffs can plead truthfully the additional facts necessary to state these claims,

14  particularly with respect to loss causation, assuming that such facts exist their task should not be

15  difficult.  However, leave will be denied as to Plaintiffs' remaining claims.  Despite having made

16  hundreds of pages of allegations in multiple pleadings, both authorized and unauthorized,

17  Plaintiffs have not come close to asserting a viable claim under Section 10(b)(5) or for common-

18  law fraud, and Plaintiffs do not even address the motion to dismiss their negligent

19  misrepresentation claim against PwC.  Particularly because many of Plaintiffs' allegations are

20  confusing and/or internally inconsistent, both Defendants and the Court have been limited

21  severely in attempting to address the substantive adequacy of Plaintiffs' fraud claims in a

22  meaningful way.  In addition, and apart from the undue burden sorting through Plaintiffs'

23  pleadings has placed on the Court, each of the Defendants has suffered substantial prejudice by

24  having to pay lawyers to read, attempt to understand and respond to Plaintiffs' allegations.

25  Having presided over two lengthy hearings at which it was able to question Plaintiffs closely, the

26  Court concludes that at least as to the fraud claims, there is no realistic possibility that Plaintiffs

27  could cure the defects in their most recent pleading and meet the heightened pleading standard

28  for such claims, and that permitting them to attempt to do so would unfairly burden both

10

1    Defendants and the Court.

2                                    **V. ORDER**

3          Good cause therefor appearing, IT IS HEREBY ORDERED that Defendants' motions to

4    dismiss the Consolidated Complaint are GRANTED.  The separate motions brought by

5    Individual Defendants Larsen, Mooring, Danforth, and Eulau are terminated as moot.  Leave to

6    amend is granted only as expressly permitted above.  Any amended pleading must be filed within

7    thirty (30) days of this order.

8

9    DATED: April 17, 2008.

10

11                                         _____

12                                         JEREMY FOGEL
                                           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          11

1   This Order has been served upon the following persons:

2   <u>Counsel for Plaintiff</u>

3   James M. Kelley
    *Pro Se*
4   14390 Douglass Lane
    Saratoga, CA 95070
5
    Miki W. Larsson
6   *Pro Se*
    14390 Douglass Lane
7   Saratoga, CA 95070

8   Douglas B. Kelley
    yusfdbk@yahoo.com
9
    <u>Counsel for Defendants</u>
10
    Ignacio Salceda
11  *Wilson Sonsini Goodrich & Rosati*
    isalceda@wsgr.com
12
    Anthony I . Fenwick
13  *Davis Polk & Wardwell*
    anthony.fenwick@dpw.com
14
    David Siegel
15  *Irell & Manella LLP*
    dsiegel@irell.com
16
    Donald P. Gagliardi
17  *Bergeson, LLP*
    dgagliardi@be-law.com
18
    Justin S. Chang
19  *Shearman & Sterling LLP*
    jchang@shearman.com
20
    Steve Shea Kaufhold
21  *Akin Gump Strauss Hauer & Feld LLP*
    skaufhold@akingump.com
22
    Felix Shih-Young Lee
23  *Fenwick & West LLP*
    flee@fenwick.com
24
    Darryl Paul Rains
25  *Morrison & Foerster LLP*
    drains@mofo.com
26
    Jonathan R. Bass
27  Coblentz Patch Duffy & Bass, LLP
    EfilingJRB@cpdb.com
28

12

Case No. C 07-01238 JF
ORDER GRANTING MOTIONS TO DISMISS
(JFLC3)